# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| **MICHELLE T. BRUCE, M.D.,** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | NO. 3:15-cv-00320<br>JUDGE CRENSHAW |
| **MEHARRY MEDICAL COLLEGE,** | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Michelle T. Bruce, M.D. brings this action against Meharry Medical College ("Meharry") alleging multiple violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq*. Before the Court is Meharry's motion for summary judgment. (Doc. No. 22.) For the following reasons, Meharry's motion is **GRANTED**.

### I. Undisputed Material Facts

In 2005, Bruce began working at Meharry as an instructor. (Doc. No. 31 at 1.) In 2008, Meharry transferred Bruce to another department that required her to attend safety meetings, which were also attended by Meharry's Vice President of Administration, Dr. Bernard Ray. (Id. at 2.) Ray was not Bruce's supervisor. (Id.)

Bruce alleges that Ray created a hostile work environment by: (1) publicly disagreeing with her at safety meetings; (2) refusing to follow her advice on safety matters; (3) making an exasperated high pitch sound in response to her comments at meetings; and (4) telling one of Bruce's staff members, outside of her presence, that he would only register for an exercise program if Bruce would give him a "personal physical assessment." (Id. at 3-5.) Bruce sent an email to the

Meharry Compliance Hotline complaining about Ray's "personal physical assessment" comment. (Id. at 5.) No one responded to Bruce about her complaint. She did not make any further complaint to anyone at Meharry. (Id. at 5-6.)

On November 12, 2013, about two-and-a-half months after Ray's "personal physical assessment" comment, Dr. Duane Smoot, Chair of the Internal Medicine Department, met with Bruce and other doctors to request that they provide occupational medical services at a new Meharry clinic in Antioch, Tennessee, to fulfill the clinical requirement in their employment contracts. (Id. at 7-9.) Bruce declined this request. (Id. at 8; Doc. No. 25-3 at 2.) Bruce alleges that Smoot tried to force her to reconsider this decision. (Doc. No. 30 at 7.) She believes that male physicians also declined Smoot's request to work at the clinic and that he did not force them to reconsider. (Doc. No. 31 at 8-9.) However, she admits that she does not know whether any of the male doctors were required to work at the clinic. (Id. at 9.) In fact, Smoot asked three other physicians in the department to work at the clinic—two males and one female. (Id. at 9-10.) All three told Smoot that they did not want to work at the clinic but would do so if assigned. (Id. at 10.) A male doctor provides services at the clinic and is its primary doctor. (Id.)

Bruce pursued other employment because she felt that her "skills as an occupational medicine physician weren't being utilized." (Id. at 31; Doc. No. 25-1 at 83.) On March 3, 2014, she resigned, effective March 17, 2014. (Doc. No. 31 at 12.) She admits that no one at Meharry requested that she resign. (Id.) When she resigned, her salary at Meharry was over $138,000. (Id.) On March 17, 2014, she began working for General Motors at an annual salary of over $185,000. (Id.) After her resignation, Bruce filed an EEOC charge. (Id. at 11.) Smoot had no knowledge that Bruce had filed a hotline complaint that Ray had sexually harassed her until after she filed the EEOC charge. (Id.)

2

**II.     Legal Standard**

In reviewing a motion for summary judgment, this Court will only consider the narrow question of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The Court is required to view "the facts and reasonable inferences in the light most favorable to the nonmoving party . . . ." Ferrari v. Ford Motor Co., 826 F.3d 885, 891 (6th Cir. 2016) (citing Cass v. City of Dayton, 770 F.3d 368, 373 (6th Cir. 2014).

**III.    Analysis**

Bruce brings Title VII claims for gender discrimination, hostile work environment, and retaliation.

**A.  Gender Discrimination**

Title VII makes it unlawful for an employer to discharge or otherwise discriminate against any individual because of such individual's sex. 42 U.S.C. § 2000e-2(a)(1). Where, as here, a plaintiff has no direct evidence of gender discrimination, the Court applies the three-part burden-shifting framework developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), as modified by Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981), to determine whether the plaintiff has proffered sufficient evidence to survive summary judgment. Jackson v. VHS Detroit Receiving Hosp., Inc., 814 F.3d 769, 776 (6th Cir. 2016). The plaintiff bears the initial "not onerous" burden of establishing a prima facie case of discrimination by a preponderance of the evidence. White v. Baxter Healthcare Corp., 533 F.3d 381, 391 (6th Cir. 2008). A plaintiff can establish a prima facie case of employment discrimination by demonstrating that: (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was replaced by a person outside the protected

class or treated differently than similarly-situated, non-protected employees. Id. Once the employee establishes a prima facie case, the burden shifts to the employer to offer evidence of a legitimate non-discriminatory explanation for the adverse employment action. Id. If the employer does so, the burden shifts back to the employee to show that the employer's proffered reason was not the true reason, but instead was merely a pretext for discrimination. Id. (citing Burdine, 450 U.S. at 253).

Bruce was a member of a protected class and was qualified for her position. Both parties take issue with whether she suffered an adverse employment action and whether a male was treated more favorably. (Doc. No. 23 at 10.) Bruce says that an adverse employment action occurred when Meharry attempted to force her to work at the clinic, because it would have made her responsibilities in her current position logistically impossible, stunted her professional growth, and affected her salary, although she does not tell the Court how her salary would have been affected. (Doc. No. 30 at 7.) She also argues that Meharry treated similarly situated male physicians more favorably because it did not require the male doctors to reconsider their decision not to work at the clinic or attempt to force them to work there. (Id. at 7-8.)

The Sixth Circuit has articulated the standard for establishing a materially adverse employment action:

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

Ford, 305 F.3d at 553 (quoting Hollins v. Atlantic Co., 188 F.3d 652, 662 (6th Cir. 1999)). The Sixth Circuit "has consistently held that de minimis employment actions are not materially adverse and, thus, not actionable." Id.

After making every inference in Bruce's favor, she offers no evidence from which this Court can find that accepting the assignment to work at the clinic would have changed her pay, benefits, title or significantly diminished her job responsibilities or position. She offers no "objective indicia of adversity," as required in by Title VII. Momah v. Dominguez, 239 Fed. Appx. 114, 123 (6th Cir. 2007); Policastro v. Northwest Airlines, Inc., 297 F.3d 535, 539 (6th Cir. 2002) (applying an objective test that considers whether the employment action at issue was "objectively intolerable to a reasonable person."). Instead, she merely perceived the new assignment to be an inconvenience because of unknown "logistical difficulties," assumptions about her professional growth and presumed negative impact on her salary. Her "subjective impressions as to the desirability of one position over another are not relevant" in determining whether the employee suffered an adverse employment action." Policastro, 297 F.3d at 539. Meharry was entitled to assign Bruce to the clinic even over her objection. Momah, 239 Fed. Appx. at 123 (quoting O'Neal v. City of Chicago, 392 F.3d 909, 913 (7th Cir. 2004) (holding that a "purely subjective preference for one position over another" does not "justify trundling out the heavy artillery of federal antidiscrimination law")). Despite having the right to so assign her, Bruce offers no evidence that Meharry's proposal to assign her to the clinic would have "significantly diminished" her material job responsibilities.

The undisputed material facts prove not that Meharry treated her differently than similarly-situated male employees, but the same as other males and one female. Meharry has presented admissible evidence that Smoot asked three other doctors – one female and two males. Two other physicians were allowed to decline serving at the clinic, just like Bruce. (Doc. No. 30 at 8.) Dr. Darryl Jordan, a male doctor, responded that he did not wish to work at that clinic but would do so if assigned. (Smoot Aff., Doc. No. 25-3 at ¶ 12.) Dr. Jordan now provides services at that clinic

and is listed as the clinic's primary doctor. (Id. at ¶ 13.) There is no evidence to the contrary. (Doc. No. 31 at 10-11.)

Even if Bruce were able to make a prima facie case of gender discrimination, she cannot show that Meharry's legitimate, non-discriminatory reason for Smoot's asking her to work at the clinic—Meharry's business need to staff the clinic—was pretext for discrimination. (Doc. No. 23 at 11.) Bruce can demonstrate pretext designed to conceal unlawful discrimination by offering evidence that Meharry's reason for asking her to move to the clinic: (1) had no basis in fact; (2) did not actually motivate the employer; or (3) was insufficient to warrant the adverse employment action. Loyd v. Saint Joseph Mercy Oakland, 766 F.3d 580, 590 (6th Cir. 2014). There is no such evidence before the Court. Bruce believes that the best use of her skills was to remain in the same job position and not transfer to the clinic. That Bruce disagrees with Meharry's business decision to ask her to work at the clinic provides no basis for a reasonable jury to infer that Meharry's reasons for asking her to work at the clinic was pretext for discrimination. The role of the courts "is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments." Hedrick v. W. Reserve Care Sys., 355 F.3d 444, 462 (6th Cir. 2004) (quoting Simms v. Oklahoma ex rel. Dep't of Mental Health and Substance Abuse Servs., 165 F.3d 1321, 1330 (10th Cir. 1999)).

Bruce cannot make out a prima facie case of gender discrimination or show that Meharry's non-discriminatory reason for asking her to work at the clinic is a pretext for discrimination. The Court will dismiss Plaintiff's gender discrimination claim.

### B. Hostile Work Environment Claim

To establish a prima facie case of hostile work environment, the plaintiff must show that: (1) she was a member of a protected class; (2) she was subject to unwelcome sexual harassment;

(3) the harassment was based on her status as a protected individual; (4) the harassment unreasonably interfered with the plaintiff's work performance by creating an intimidating, hostile, and offensive environment; and (5) the employer was liable for the harassing conduct. Clay v. United Parcel Serv., Inc., 501 F.3d 695, 706 (6th Cir. 2007). Whether harassment is severe or pervasive has an objective and a subjective component. Id. "It requires the court to examine, under the totality of the circumstances, 'the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance.'" Id. (quoting Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 733 (6th Cir. 2006)) (alteration in original). The harassment "must be extreme to amount to a change in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Id. The "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a general civility code." Id.

Meharry argues that the only comment cited by Bruce in support of her claim—Ray's "personal physical assessment" comment—was not made to her. (Doc. No. 23 at 14.) Bruce responds that Ray "would frequently belittle" her during safety meetings that when coupled with his "personal physical assessment" comment constitutes severe and pervasive conduct. (Doc. No. 30 at 11.)

This Court finds that considering the totality of the circumstances in the light most favorable to Bruce, no reasonable jury could find that Ray's comments, over nine years of employment, were sufficiently severe to amount to a change in the terms and conditions of employment. See, e.g., Burnett v. Tyco Corp., 203 F.3d 980, 984-85 (6th Cir. 2000) (three sexually

7

offensive remarks made by the supervisor in a six-month period did not constitute pervasive discriminatory conduct). "Title VII does not provide protection from discriminatory behavior such as "sporadic use of abusive language, gender-related jokes, and occasional teasing.'" Tepper v. Potter, 505 F.3d 508, 516 (6th Cir. 2007) (quoting Faragher, 524 U.S. at 788). Bruce also claims that Ray "belittled" her and used a high pitch sound towards her during safety meetings (Doc. No. 30 at 11), but that conduct, even if true, was gender neutral and involved a disagreement with her business opinions, which is not actionable under Title VII. Faragher, 524 U.S. at 788) (limiting Title VII's application to only "extreme" conduct to avoid turning the statute into a "general civility code"); Batuyong v. Gates, 337 Fed. Appx. 451, 457 (6th Cir. 2009) (affirming dismissal of a hostile environment claim based on "various incidents in which [the plaintiff] was criticized by her supervisors")). Bruce has failed to meet her burden of showing that her work environment was objectively offensive, such that a reasonable person would find it hostile or abusive. Faragher, 524 U.S. at 787; Williams v. Gen. Motors Corp., 187 F.3d 553, 568 (6th Cir. 1999).

**C. Retaliation Claim**

Title VII's antiretaliation provision prohibits an employer from retaliating against an employee who has "opposed any practice made an unlawful employment practice by" Title VII or because an employee has made a "charge" under the statute. 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, Bruce must show: (1) she engaged in protected activity; (2) the exercise of protected rights was known to the employer; (3) the employer took an adverse employment action against the plaintiff;, and (4) there was a causal connection between the protected activity and the adverse action. Taylor v. Geithner, 703 F.3d 328, 336 (6th Cir. 2013). To establish a causal connection, the plaintiff must establish that his or her protected activity was a but for cause of the alleged adverse action by the employer. University of Texas Southwestern

Medical Center v. Nassar, 133 S. Ct. 2517, 2533–34 (2013).

Bruce claims that Smoot asked her to work at the clinic because of her hotline complaint about Ray's comment. (Doc. No. 1; Doc No. 30 at 10.) Meharry counters that there is no evidence that Smoot knew about her hotline complaint; no evidence of an adverse employment action; and no evidence to establish a but for causal connection between her protected activity and her resignation or Smoot's request that she work at the clinic. (Doc. No. 23 at 13.) Bruce says that Meharry knew of her hotline complaint because she submitted it through the college's hotline; the adverse employment action is not only the request she work at the clinic but also her constructive discharge when she resigned in March 2014; and the close temporal proximity between her hotline complaint and the request she work at the clinic or her constructive discharge establish a causal connection between her protected activity and Meharry's adverse action. (Doc. No. 30 at 10.)

Bruce has failed to establish a prima facie retaliation claim. First, she is mistaken that her hotline complaint is legally sufficient to show that Smoot knew about her complaint. She is required to show that Smoot actually knew of her protected activity. Mulhall v. Ashcroft, 287 F.3d 543, 554 (6th Cir. 2002) (finding no reasonable jury could find retaliation where plaintiff "failed to produce evidence sufficient to establish that the officials taking the adverse employment action knew of his protected activity"). An employee's submission of an internal corporate complaint does not mean that every corporate manager has knowledge of the complaint. Based on the record before the Court, no reasonable jury could find retaliation because Armstrong has produced no evidence from which a reasonable jury could infer that Smoot in fact knew about her hotline complaint about Ray.

Second, Bruce has not shown that Meharry took an adverse employment action against her. As explained above, Meharry's request that she work at the clinic was not an adverse action.

9

Bruce's argument that Meharry constructively discharged her by creating a sexually hostile work environment and by merely asking her to work at the clinic do not save her case. (Doc. Nos. 1 at 5; 30 at 7, 10.) To demonstrate a constructive discharge, Bruce must show that: (1) Meharry deliberately created intolerable working conditions, as perceived by a reasonable person; and (2) Meharry did so with the intention of forcing the employee to quit. Laster v. City of Kalamazoo, 746 F.3d 714, 727–28 (6th Cir. 2014). To determine whether the first prong has been met, the court considers

> Whether a reasonable person would have [felt] compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

Id. (quoting Logan v. Denny's, Inc., 259 F.3d 558, 569 (6th Cir. 2001)). Bruce offers no evidence of any of these factors. The undisputed facts are that Bruce and three other doctors were asked, not forced, to work at the clinic. As at-will employees, Meharry certainly had the right to assign Plaintiff to whatever workplace best advanced its business needs, especially when, as here, there is no evidence that her pay, benefits or other terms and conditions would be affected. She also offers no evidence that Meharry wanted her to resign or could reasonably have foreseen that asking her to work at the clinic would have caused her to feel compelled to resign. As discussed above, her claim of a sexually hostile work environment has no merit.

Finally, Bruce has not shown but for causation. Her only argument is the close temporal proximity between her hotline complaint and the request that she work at the clinic or her alleged constructive discharge. Although "a causal connection for purposes of establishing a prima facie case of retaliation can be shown through knowledge [of the complaints] coupled with a closeness

in time that creates an inference of causation . . . temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." Imwalle v. Reliance Med. Prod., Inc., 515 F.3d 531, 550 (6th Cir. 2008). Bruce does not present evidence of the date of her hotline complaint, so it is not possible to determine the precise time interval between her protected activity and Smoot's request that she work at the clinic. If she sent the email soon after Ray's August 22, 2013 comments, Smoot's request would have followed approximately two-and-a-half months later, which does not constitute sufficient temporal proximity to support an inference of causation. See, e.g., Kean v. IT-Works, Inc., 466 Fed. App'x 468, 471 (6th Cir. 2012) (discharge that "came roughly two-and-a-half months after the complaint" did not support "an inference of causation"). The time gap between her protected activity and her alleged constructive discharge is even more than two and one-half months. Even if the time between her hotline complaint and the alleged adverse employment action were probative of but for causation, she has no other evidence, compelling or otherwise, that would support a finding of but for causation. Imwalle, 515 F.3d at 550. Bruce has not shown that her hotline complaint about Ray were the but for cause of any actions taken against her by Meharry.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS Meharry's motion for summary judgment.

The Court will issue an appropriate order.

                                                                        _____  
                                                                        WAVERLY D. CRENSHAW, JR.  
                                                                         UNITED STATES DISTRICT JUDGE